# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DAVID ADAM BAKER,                          Case No. 1:19-cv-0060
      Plaintiff,

                                   McFarland, J.

      vs.                              Litkovitz, M.J.

JEFFREY CARNINE, et al.,                   **REPORT AND**
      Defendants.                        **RECOMMENDATION**


      Plaintiff David Baker, proceeding pro se, brings this action alleging violations of his civil rights under 42 U.S.C. § 1983 and state claims under Ohio common law.  (Doc. 18, Second Amended Complaint)[1].  Plaintiff brings claims against Jeffrey Carnine in his individual and official capacity for malicious prosecution under federal and state law (Count 1); civil conspiracy (Count 2); fabrication of evidence under federal and state law (Count 3); deprivation of liberty under federal and state law (Count 5); illegal seizure under federal and state law (Count 6); illegal search under federal and state law (Count 7); and intentional and negligent infliction of emotional distress (Counts 8 and 9).[2]  Plaintiff also brings a municipal liability claim against defendant Carnine in his official capacity under state and federal law (Count 11).[3]  This matter is before the Court on Carnine's motion for summary judgment (Doc. 55), plaintiff's response in opposition (Doc. 60), and defendant's reply (Doc. 63).

---

[1] The undersigned issued a Report and Recommendation on June 15, 2021, recommending that plaintiff's motions for leave to further amend and supplement the complaint as amended (Docs. 64, 65) be denied.  (Doc. 69).  The Report and Recommendation is pending before the district judge.  Thus, as of the date of this opinion, the second amended complaint (Doc. 18) is the operative complaint.
[2] Defendants Jacqueline Stachowiak, Matthew Broo, and David McIlwain have been dismissed from the lawsuit. (Doc. 51).
[3] Defendant Carnine is not named in Count 4 (failure to intervene), Count 10 (supervisory liability), and Count 12 (a malicious prosecution claim against other defendants).

## I. Facts

Defendant Carnine was an agent of the Hamilton County, Ohio Drug Abuse Reduction Taskforce (DART) during 2016.[4]  (Carnine Aff., Doc. 55-1 at PAGEID 305).  In February 2016, Carnine was working in conjunction with other members of DART and confidential informants (CIs) to conduct investigations related to seizing narcotics and drug enforcement.  (*Id*.).  Plaintiff was the subject of a criminal investigation involving DART.  (*Id*.).  Carnine participated in an operation with DART and an unnamed CI on February 1, 2016 to negotiate the purchase of heroin from plaintiff.  (*Id*.).  According to defendant, the CI met with plaintiff at the McDonald's restaurant located at 7142 Reading Road, Cincinnati, Ohio 45237, which is located within 1000 feet of Woodward High School.  (*Id*.).  Defendant states the CI purchased a quantity of heroin from plaintiff with government funds.  (*Id*.).  Defendant further asserts that after the CI provided the heroin to DART agents, the agents conducted mobile surveillance of plaintiff with the assistance of the Cincinnati Police Department.  (*Id*. at PAGEID 306).  When shown a photograph of plaintiff, the CI identified plaintiff as the individual who had sold him the heroin. (*Id*.).

The heroin was tested by the Hamilton County Crime Laboratory.  (*Id*.; Doc. 55-1, Exh. C at PAGEID 309).  Testing confirmed that it weighed $1.996 \pm .0005$ grams and that it contained both fentanyl and acetyl fentanyl.  (Doc. 55-1, Exh. C at PAGEID 309).

On August 15, 2016, defendant Carnine presented an affidavit to the Hamilton County Municipal Court (Case Nos. C16A22114A, C16A22114B) in which he swore that "on or about the 1st day of February, 2016, at Hamilton County, Ohio, David BAKER, did**knowingly sell Fentanyl and Acetyl Fentanyl to an agent of DART during a narcotics investigation."  (*Id*., Exh.

---

[4] Carnine is no longer an agent of DART.  (Doc. 55-1 at PAGEID 305).

A at PAGEID 307).  The affidavit listed the location of the offense as 7142 Reading Road, Cincinnati, Ohio 45237.  (*Id*.).  On August 16, 2016, the Hamilton County Municipal "Clerk or Deputy Clerk" completed a "Probable Cause Checklist" on which they indicated that Carnine's affidavit met the following requirements:

- "Jurisdiction" because it contained "a statement of facts indicating the defendant violated the statute cited"

- "Identity" because "the complaint/affidavit indicate[d] how the complainant/officer obtained the facts recited," i.e., "from personal knowledge, knowledge gained from other officers, or knowledge gained from a reliable informant or citizen"

- "Facts" because "the complaint/affidavit containe[ed] a statement of facts indicating the defendant violated the statute cited"

- "Reason" because "the complaint/affidavit indicate[d] how the complainant/officer obtained the facts recited either from personal knowledge, knowledge gained from other officers, or knowledge gained from a reliable informant or citizen"

- "The complaint/affidavit contain[ed] the complainant/officer's answer to th[ese] question[s]: 'What makes you think the defendant committed the offense charged?'" and "Does the complaint/affidavit contain sufficient information to cause a reasonably prudent person to believe the named defendant committed the offense charged."

(*Id.*, Exh. B at PAGEID 308, Case No. C/16/CRA/22114B).  Hamilton County Municipal Court records show that warrants were issued for plaintiff's arrest on charges of Trafficking in Drugs in violation of Ohio Rev. Code § 2925.03 based on complaints filed by Carnine on August 16, 2016 in Case Nos. C/16/CRA/22114A/B.[5]  Plaintiff was arrested on August 28, 2016 and bond was set on each charge.

On September 6, 2016, the Grand Jury returned an indictment against plaintiff on two counts of aggravated trafficking in drugs in violation of Ohio Rev. Code § 2925.03(A)(1) for the

---

[5] https://www.courtclerk.org/.  Federal courts may take judicial notice of proceedings in other courts of record. *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (citing *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) (collecting cases); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980)).

knowing sale or offer to sell a Schedule I controlled substance, acetyl fentanyl and fentanyl, on February 1, 2016 in the vicinity of a school or a juvenile.  (Doc. 55-2 at PAGEID 312-13).  The Prosecuting Attorney for the Court of Common Pleas subsequently requested that an arrest warrant be issued upon indictment.  (*Id*. at PAGEID 311).  Plaintiff was held in the Hamilton County Justice Center on the charges from December 7, 2016, until the Hamilton County Court of Common Pleas dismissed the charges against plaintiff for want of prosecution on January 25, 2018.  (Doc. 64-1, Exh. B at PAGEID 408).  Hamilton County Assistant Prosecutor Matthew Broo, who assisted in the prosecution of plaintiff, states that the Prosecutor's Office sought dismissal of the criminal case against plaintiff because audio evidence against him had been corrupted; it was impractical to transport the CI, who was incarcerated in the Ohio Department of Corrections during the prosecution of plaintiff, to Hamilton County; and other criminal charges were pending against plaintiff.  (Matthew Broo Aff., Doc. 63-1 at PAGEID 390-91).

Plaintiff denies that he was at the McDonald's restaurant located at 7142 Reading Road, Cincinnati, Ohio 45237 on February 1, 2016.  (Plaintiff's Aff., Doc. 60, Exh. C at PAGEID 349). Plaintiff also alleges on information and belief that, "Carnine misrepresented a civilian witness as a[n] agent of Dart inside of his affidavit for [plaintiff's] arrest," and Carnine never witnessed a transaction between plaintiff and the alleged CI.  (*Id*. at PAGEID 350).  Plaintiff asserts that prosecutors stated at discovery hearings held in February through June 2017 that they had a civilian witness who was identified as David Mosley, but they had no CI.  (*Id*. at PAGEID 349). Plaintiff alleges that "the civilian witness David Mosley" was in the Hamilton County Justice Center on the day trial was scheduled to begin in January 2018 as a result of the State subpoenaing him from prison; however, prosecutors stated in court that same day that they

4

could not find the CI and did not plan on pursuing him further.[6]  (*Id*. at PAGEID 349-50).

## II.  Defendant Carnine's motion for summary judgment

Defendant Carnine moves for summary judgment on each of plaintiff's claims. Defendant argues that he is entitled to qualified immunity from liability and summary judgment as a matter of law on plaintiff's claims for malicious prosecution (Count 1), civil conspiracy (Count 2), and illegal search and seizure (Counts 6 and 7) because there was probable cause for plaintiff's arrest on August 30, 2016.  (Doc. 55 at PAGEID 292-98).  Defendant contends that plaintiff has not alleged a basis for his state law claims of negligent and intentional infliction of emotional distress (Counts 8 and 9).  (*Id*. at PAGEID 298-302).  Defendant also asserts that plaintiff's remaining claims (failure to intervene under federal and state law - Count 4; supervisory liability - Count 10; and malicious prosecution - Count 12) should all be dismissed because they do not mention Carnine.  (*Id*.).

### A.  Summary judgment standard

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' only if its resolution will affect the outcome of the lawsuit." *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. Aug. 29, 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to

---

[6] Hamilton County Common Pleas Court records show that subpoenas were issued to David Mosley to appear at trial and testify as a witness on behalf of the State in Case No. B1604890 on June 1, 2017 and November 13, 2017. The trial was continued several times, and the Common Pleas Court issued an "Entry Ordering Return of Inmate" at the Request of the State on January 17, 2018, ordering the Warden of Belmont Correctional Institution to deliver Mosley into the custody of the Hamilton County Sheriff to be transported to Hamilton County on or before January 25, 2018 to testify at trial.

particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The materials a party can rely on to establish the absence of a genuine dispute include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A). The movant can carry its burden by showing that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).

The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In determining if there is a genuine dispute as to a material fact, all evidence in the record is viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn to that party's benefit. *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 576-77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)). To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it

6

necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona*, 391 U.S. at 288-89).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### B.  Qualified immunity standard

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity insulates government officials not only from individual liability for money damages, but it also shields them from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part, Pearson v. Callahan,* 555 U.S. 223 (2009).

There are two steps to the qualified immunity analysis: (1) whether the officer's conduct violated a constitutional right, and (2) and if the first step is satisfied, whether the right was clearly established at the time of the injury. *Saucier,* 533 U.S. at 201.  In its discretion, the court may choose to address either question first given the particular circumstances of the case before it. *Pearson,* 555 U.S. at 236.  Once a defendant raises the qualified immunity defense, plaintiff has the burden to demonstrate that the official is not entitled to qualified immunity. *Binay v.*

*Bettendorf*, 601 F.3d 640, 647 (6th Cir 2010).  For the court to find that a constitutional right is clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

**C.  Defendant is entitled to qualified immunity on plaintiff's Fourth Amendment claims brought under § 1983**

To establish a cause of action under § 1983, a plaintiff must show that he was (1) deprived of a right secured by the Constitution or laws of the United States, (2) by an individual acting under color of state law.  *McQueen v. Beecher Cmmt'y Sch.,* 433 F.3d 460, 463 (6th Cir. 2006).  Plaintiff alleges defendant Carnine violated his Fourth Amendment rights by performing an illegal search and seizure; fabricating evidence against plaintiff; and subjecting plaintiff to a malicious prosecution.  Plaintiff claims that defendant Carnine "manufactured probable cause to seize, search, arrest, incarcerate and prosecute plaintiff."  (Doc. 18, Amended Complaint, PAGEID 111).  Plaintiff claims that Carnine knowingly made a false statement in his affidavit by stating that plaintiff knowingly sold "fentanyl and acetyl fentanyl to an agent of [DART] during a narcotics investigation on February 1, 2016 at 7142 Reading Road, Cincinnati, Ohio.  (*Id.*; Exh. A, Carnine Aff.).  Plaintiff alleges that Carnine (1) "failed to present the facts and evidence that lead (sic) him to believe that [plaintiff]" committed the offense, and (2) did not initially disclose that the agent of DART was "allegedly a civilian witness."  (*Id.*, citing Exh. B)[7].  Plaintiff alleges that by "misrepresent[ing] a civilian witness as an Agent of Dart," Carnine "misled" the

---

[7] Exhibit B includes the "State's Response to Defendant's Demand for Discovery" in plaintiff's criminal case (Doc. 18-1 at PAGEID 140-41) and the State's supplemental response (*Id.* at PAGEID 130).  The response lists as witnesses "DART Agents, information unknown at this time" and "Confidential Informant."  (*Id.* at PAGEID 141).  The supplemental response states: "Civilian witness name and address provided separately and served in court on May 26th, 2017."  (*Id.* at PAGEID 130).

individual who reviewed Carnine's affidavit regarding the probable cause determination and prevented the individual from evaluating the civilian witness's credibility. (*Id*.). Plaintiff alleges that Carnine had no personal knowledge of a sale of fentanyl and acetyl fentanyl to plaintiff on the date alleged; Carnine had no "reliable evidence" identifying plaintiff as the person at the scene of the alleged sale; and plaintiff was not in the vicinity of the alleged sale and did not sell either substance to an agent of DART, a CI, a civilian witness, or "anyone else that 'Carnine' knows of." (*Id*. at PAGEID 112). Plaintiff alleges that Carnine's "false accusations" led to plaintiff "being unlawfully seized, search, arrested [and] incarcerated" for trafficking in drugs/ aggravated trafficking in drugs. *Id*.

Plaintiff further claims that Carnine "turned over his affidavit, complaint, warrant for [plaintiff's] arrest and a civilian witness" to the prosecuting attorney, Jacqueline Stachowiak, who "reviewed the evidence and determined that probable cause to prosecute [plaintiff] existed based in large part" on this evidence. (*Id*.). Plaintiff also alleges that Stachowiak initiated a prosecution against plaintiff by presenting that evidence to the Grand Jury, which in turn determined there was probable cause to issue an indictment against plaintiff on or about September 7, 2016. (*Id*.). Plaintiff alleges that the only evidence the State produced pursuant to his discovery requests was a fentanyl lab report; Carnine's affidavit, complaint, warrant for plaintiff's arrest, and an arrest report; the identity of the civilian witness; and a bill of particulars. (*Id*. at 113). Plaintiff contends that no "confidential informant was ever disclosed" even though "the state prosecution was initiated based upon the role of the alleged sale to a confidential informant," according to the bill of particulars. (*Id*. at PAGEID 113-114). Plaintiff alleges that "Carnine's misleading misrepresentations inside of a conclusory bare bones affidavit" led to plaintiff being "falsely seized searched, arrested, incarcerated and prosecuted . . . based upon an

alleged sale of fentanyl and acetyl fentanyl from [plaintiff] to a nonexistent confidential

informant. . . ." (*Id*. at PAGEID 117).

Defendant Carnine moves for summary judgment on plaintiff's Fourth Amendment

claims for malicious prosecution (Count 1), civil conspiracy (Count 2), fabrication of evidence

(Count 3), deprivation of liberty (Count 5), illegal search and seizure (Counts 6 and 7), which

defendant contends encompasses plaintiff's claims that plaintiff was wrongfully investigated

prosecuted, convicted, and incarcerated, and plaintiff's claim for municipal liability (Count 11).

(Doc. 55 at PAGEID 292-293). Carnine argues that an arrest pursuant to a facially valid warrant

is normally a complete defense to a federal constitutional claim for false arrest or false

imprisonment, and that here the "Probable Cause Checklist" was completed by the Hamilton

County Municipal Court Clerk or Deputy Clerk before arrest warrants were issued for plaintiff.

(*Id*. at PAGEID 287-88). Carnine alleges that he and DART "possessed facts, circumstances and

textual evidence to lead a reasonably prudent officer to believe" that plaintiff had committed the

specific offense he was charged with, i.e., violations of Ohio Rev. Code § 2925.03. (*Id*.at

PAGEID 293). Carnine argues that the probable cause determination and grand jury indictment

together create a presumption of probable cause to "investigate, arrest, and detain" plaintiff. (*Id*.

at PAGEID 287). As such, Carnine argues that plaintiff has not created an issue of fact to

overcome the presumption created by the probable cause determination and grand jury

indictment. (*Id*.).

### 1.  **Illegal search and seizure (False arrest)**

The Fourth Amendment to the United States Constitution "protects against unreasonable

searches and seizures and requires that arrest warrants be issued only upon a showing of

probable cause." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (citing U.S. Const.

10

amend. IV).   Plaintiff must "prove that the arresting officer lacked probable cause to arrest" him
to establish a false arrest claim under the Fourth Amendment.  *Id*. (quoting *Voyticky v. Vill. of
Timberlake,* 412 F.3d 669, 677 (6th Cir. 2005)) (internal citation omitted).

"Probable cause" is "reasonable grounds for belief, supported by less than prima facie
proof but more than mere suspicion.'"  *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010)
(quoting *United States v. McClain,* 444 F.3d 556, 562 (6th Cir. 2005) (quoting in turn *United
States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).  The probable cause inquiry
"depends upon the reasonable conclusion to be drawn from the facts known to the arresting
officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004).  There is
probable cause for an arrest if  at the time of the arrest "the facts and circumstances within [the
officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient
to warrant a prudent man in believing that the [plaintiff] had committed or was committing an
offense." *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (alterations in
original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  "In other words, probable cause exists
only when the police officer 'discovers reasonably reliable information that the suspect has
committed a crime.'"  *Id*. (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)
(citing *Beck*, 379 U.S. at 91).  "A probable cause determination is based on the 'totality of the
circumstances'" and must take into account "both the inculpatory *and* exculpatory evidence"
within the arresting officer's knowledge at the time of the arrest. *Id*. (quoting *Wesley v.
Campbell*, 779 F.3d 421, 429 (6th Cir. 2015)).  Once probable cause is established, an officer is
not obligated to further investigate or search for potentially exculpatory evidence. *Ahlers v.
Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (citations omitted).  *Cf. Radvansky v. City of Olmsted
Falls*, 395 F.3d 291, 308 (6th Cir. 2005) (distinguishing a situation where the officers had

11

"knowledge and possession of exculpatory evidence at the time of the arrest," which they may have failed to take into account prior to the arrest, from the situation in *Ahlers*, where the officer "failed to collect exculpatory evidence"). Similarly, a police officer is not bound "to give any credence to a suspect's story," and "a plausible explanation [should not] require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). "To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" *Id.* Finally, even if probable cause to arrest the plaintiff for a specific crime is lacking, a false arrest claim will not lie under § 1983 if there is probable cause for the plaintiff's arrest on a related offense. *Voyticky,* 412 F.3d at 676.

Plaintiff was arrested pursuant to arrest warrants issued upon an affidavit and two complaints sworn by Carnine and a "Probable Cause Checklist" completed by the Hamilton County Municipal Court "Clerk or Deputy Clerk." (Doc. 55-1, Exh. B at PAGEID 308). Carnine argues that the probable cause determination and grand jury indictment establish that there was probable cause to investigate, arrest, and detain plaintiff. (Doc. 55 at PAGEID 286-90). It is ordinarily "a complete defense" to a Fourth Amendment claim for false arrest that the arrest was "pursuant to a facially valid warrant." *Robertson*, 753 F.3d at 618 (quoting *Voyticky,* 412 F.3d at 677). *See also OPW Fueling Components v. Works*, No. 1:06-cv-187, 2007 WL 1406956, at *9 (S.D. Ohio May 9, 2007) (order) ("In general, an investigator or police officer is entitled "to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure. . . ."). Under Ohio law, a clerk of court or a deputy clerk of court may make a probable cause determination and issue an arrest warrant. *Voyticky,* 412 F.3d at 677; *Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 836-38 (S.D. Ohio 1999) (citing *Shadwick v. City of*

12

*Tampa,* 407 U.S. 345 (1972); Ohio. R. Crim. P. 4(A).[8] Arrest warrants issued by court clerks in Ohio are typically considered facially valid such that an officer is entitled to qualified immunity when he relies on "the judicially secured warrant." *Fry v. Robinson*, 678 F. App'x 313, 318 (6th Cir. 2017) (citing *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005); *Sampson*, 108 F. Supp. 2d at 836). *See also Carrasquillo v. City of Cleveland,* No. 1:10-cv-00219, 2011 WL 3841995, at *3-5 (N.D. Ohio Aug. 30, 2011) (expressing doubt as to "whether careful consideration is given probable cause determinations when a municipal court clerk or deputy clerk - in lieu of a judge or magistrate - registers a felony arrest warrant," but finding warrants were not facially invalid given that "Ohio law expressly permits a clerk of court to issue felony warrants, trusting they will not merely rubber-stamp a police officer and prosecutor's probable cause findings") (citing *United States v. Master,* 614 F.3d 236, 241 (6th Cir. 2010) (states may determine who can approve warrants and what type of warrants an approved person is authorized to issue); *State v. Fairbanks,* 289 N.E.2d 352, 356-57 (Ohio 1972) (clerk of courts allowed to issue felony arrest warrant (citing *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972) (a municipal court clerk qualifies as "a neutral and detached judicial officer for purposes of issuing warrants for violations of municipal ordinances"); Ohio Rev. Code § 2935.10(A) (setting forth procedure upon filing of affidavit or complaint for a misdemeanor or felony offense); Ohio R. Crim. P. 4(a)(1)).

---

[8] *Sampson* also cited three Ohio state court cases for this proposition. Ohio R. Crim. P. 4(A) provides:

> If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

There are exceptions to the general rule that arrest warrants issued by municipal court clerks in Ohio are considered facially valid and entitle the arresting officers to qualified immunity. *Fry*, 678 F. App'x at 318. First, a warrant application that lacks "sufficient indicia of probable cause such that it is unreasonable to believe that probable cause was established" violates an individual's Fourth Amendment right "to be free from false arrest." *Id*. at 318 (citing *Messerschmidt v. Millender*, 565 U.S. 535 (2012); *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). Second, a warrant application violates an individual's Fourth Amendment right to be free from false arrest when there has been a "deliberate or reckless submission of false statements or omission of facts that are material to a probable cause determination." *Id*. (citing *Wesley v. Campbell*, 779 F.3d 421, 428-29 (6th Cir. 2015); *Sykes*, 625 F.3d at 305. *See also Vakilian v. Shaw,* 335 F.3d 509, 517 (6th Cir. 2003) ("An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest.") (citing *Ahlers,* 188 F.3d at 373). A warrant issued by a court clerk in Ohio does not shield arresting officers from liability for false arrest when the officer "responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause" or "knew that those who obtained the warrant had deceived the authorizing body.'" *Robertson*, 753 F.3d at 619 (quoting *Juriss v. McGowan*, 957 F.2d 345, 350-51 (7th Cir. 1992)). An officer "cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *OPW Fueling Components*, 2007 WL 1406956, at *9 (quoting *Vakilian,* 335 F.3d at 517).

In determining whether a warrant was supported by "sufficient indicia of probable cause," the court's review is limited to "the four corners of the affidavit." *Fry*, 678 F. App'x at

319 (citing *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013)).  While affidavits do not have to be "perfect" and need not "provide every specific piece of information," *Hale*, 396 F.3d at 725), they "do require 'particularized facts' that show veracity, reliability, and a basis of knowledge that goes 'beyond bare conclusions and suppositions.'" *Fry*, 678 F. App'x at 319 (quoting *Rose*, 714 F.3d at 367).  Absent some identifiable basis for an officer's belief that an individual has engaged in unlawful activity, a complaint and affidavit are insufficient to establish probable cause.  *Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 836–38 (S.D. Ohio 1999) (citing *United States v. Fachini,* 466 F.2d 53, 56 (6th Cir.1972)) (noting that a complaint must provide an affiant's answer to the hypothetical question, "What makes you think that the defendant committed the offense charged?").  A judicial officer cannot find probable cause merely by ratifying "the bare conclusion of others." *Illinois v. Gates,* 462 U.S. 213, 239 (1983) (*quoted in United States v. Weaver,* 99 F.3d 1372, 1377 (1996)).  "Affidavits containing only conclusory statements give the judicial officer 'no basis at all for making a judgment regarding probable cause.'" *U.S. v. Alfaro*, No. 1:08-cr-37, 2008 WL 5378363, at *5 (S.D. Ohio Dec. 24, 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

"Where qualified immunity is asserted, the issue of probable cause is one for the court." *OPW Fueling Components*, 2007 WL 1406956, at *9 (quoting *Vakilian,* 335 F.3d at 517).  An officer is not entitled to the "'shield of immunity' otherwise conferred by a warrant 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Messerschmidt*, 565 U.S. at 547 (quoting *Leon,* 468 U.S. at 923) (internal quotation marks omitted)).  *See also Malley v. Briggs*, 475 U.S. 335, 345-46 (1986) (the defendant was not entitled to the immunity conferred by a judicially issued warrant because "a reasonably well-trained officer in [his] position would have known that his affidavit failed to

establish probable cause and that he should not have applied for the warrant."). Further, a defendant is not entitled to the immunity afforded by a warrant based on the submission of false information if the plaintiff establishes: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth, and (2) that the allegedly false or omitted information was material to the finding of probable cause." *OPW Fueling Components*, 2007 WL 1406956, at *9 (citing *Vakilian*, 335 F.3d at 517).

Courts have found warrants were not supported by probable cause and lacked facial validity in cases involving affidavits and complaints very similar to the affidavit and complaints at issue here. In *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560 (1971), the Supreme Court held that a complaint filed by a sheriff that charged the defendant and another individual with breaking and entering a building was insufficient to support a warrrant where the complaint stated that:

> I, C.W. Ogburn, do solemnly swear that on or about the 23 day of November, A.D.1964, in the County of Carbon and State of Wyoming, the said Harold Whiteley and Jack Daley, defendants did then and there unlawfully break and enter a locked and sealed building (describing the location and ownership of the building).

*Id.* at 562-63. The Supreme Court found that the "the sole support for the arrest warrant . . . was the complaint [which] consists of nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense described in the complaint." *Id*. at 565. Although the actual basis for the complaint was "an informer's tip," the Court found that the complaint alone "could not support the independent judgment of a disinterested magistrate" because "that fact [and] every other operative fact [was] omitted from the complaint." *Id.*

In *Fry*, 678 F. App'x at 319, the Sixth Circuit found the complaints and affidavits submitted by the arresting officer were "plainly lacking in [] particularized facts" where they

16

provided no "specific details of Fry's actions that constituted the violations and the basis for [the officer's] knowledge of the alleged offenses." *Id.* Instead, the only information provided was "the date the offenses occurred, the statutory language of the charged offense, and . . . a set of initials and a date of birth." *Id.* The court found that "[p]roviding the statutory language of the charged offense without at least identifying the basis of knowledge for it does not show probable cause." *Id.* (citing *Sampson*, 108 F. Supp. 2d at 837 (citing *Whiteley*, 401 U.S. at 565)).

Similarly, in *Webb v. Greene County Sheriff's Office,* 494 F. Supp. 2d 779 (S.D. Ohio 2007), a police officer investigating a criminal victim's claim swore to a "barebones" complaint and affidavit which contained "only a few conclusory statements" charging the suspect with two crimes. *Id.* at 784, 792. The district court found that complaints that recite "only the applicable statutory language, with the appropriate name, date and location inserted therein," are "insufficient to support a facially valid arrest warrant." *Id.* at 789.

Finally, in *Alfaro*, 2008 WL 5378363, at *5-6, the district court found a warrant relied upon by the arresting officers was likewise invalid where the complaints the agent swore to contained only "a single-line conclusory description, including the date and location of the alleged crimes, charging Alfaro with conspiracy to traffic narcotics and with the sale of heroin and cocaine"; the complaints did not include all the facts and details which, had they been included in an affidavit, would have been sufficient to support the issuance of a warrant, "including the numerous recorded conversations between the confidential informant and Alfaro and the details of the March 1, 2008 drug transaction"; the information was not included in the sworn complaints filed by the officer; there was no evidence that the agent advised the judge

17

who issued the warrant of that information; and there was no evidence that the judge relied upon anything other than the complaints in issuing the arrest warrants. *Id.*

Here, arrest warrants for plaintiff were issued after Carnine prepared an affidavit and two complaints, and the Hamilton County Municipal Court "Clerk or Deputy Clerk" completed a "Probable Cause Checklist." (Doc. 55-1, Exh. B at PAGEID 308). Plaintiff alleges that the warrants were lacking sufficient indicia of probable cause so as to render official belief in it entirely unreasonable because Carnine submitted a "barebones" affidavit; Carnine misled the issuing court with false statements and misrepresentations as to the civilian witness; and Carnine relied on information from an alleged CI of unproven reliability in preparing his affidavit and complaints. (Doc. 60 at PAGEID 333-35). The Court agrees that the warrants in this case lack sufficient particularity and indicia of reliability to create a presumption of probable cause.

As in the above cases, "the complaints and affidavits submitted by [Carnine] were plainly lacking in . . . particularized facts. They excluded the specific details of [plaintiff's] actions that constituted the violations and the basis for [Carnine's] knowledge of the alleged offenses." *Fry*, 678 F. App'x 313. Carnine's affidavit and complaints filed with the Hamilton County Municipal Court in Case Nos. C16/CRA/22114A/B simply stated the date and location of the alleged offenses and the statutory language of the charged offenses. (Doc.55-1, Exh. A at PAGEID 307). The affidavit and complaints also state that plaintiff sold the substances "to an agent of DART during a narcotics investigation," but they do not identify the agent or set forth Carnine's basis of knowledge for this information. "Providing the statutory language of the charged offense without at least identifying the basis of knowledge for it does not show probable cause." *Fry*, 678 F. App'x 313 (citing *Sampson*, 108 F. Supp. 2d at 837) (citing *Whiteley*, 401 U.S. at 565). There is no evidence that additional information other than that included in Carnine's affidavit

18

and complaints was provided to the Clerk or Deputy Clerk. Thus, the affidavit and complaints alone "could not support the independent judgment of a disinterested [judicial officer]." *See Whiteley,* 401 U.S. at 563-65. *See also Webb,* 494 F. Supp. 2d 779. The warrants are facially insufficient to establish probable cause for plaintiff's arrest. *See OPW Fueling Components,* 2007 WL 1406956, at *10 (citing *Sampson,* 108 F. Supp. 2d at 837) (a complaint that alleges the requisite statutory elements and includes a "'bare bones' recitation of facts is sufficient to establish probable cause for arrest only when the complaint indicates a source or basis for the complainant's beliefs.") (citing *Fachini,* 466 F.2d at 56 (noting that a complaint must provide an affiant's answer to the hypothetical question, "What makes you think that the defendant committed the offense charged?")).

However, this does not end the Court's inquiry into whether there was probable cause for plaintiff's arrest. The facial invalidity of the warrant "does not *ipso facto* establish a Fourth Amendment violation." *See Sampson*, 108 F. Supp. 2d at 837. Although plaintiff may not have been arrested pursuant to a valid warrant, no constitutional violation occurred if probable cause existed at the time of his arrest. *Id.* at 838 (citing *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir. 1988)). If there is no valid warrant, "[t]he question becomes, viewing the facts in a light most favorable to [the defendant], whether the arresting officers were justified in their belief that [the defendant] had probably committed or was committing a crime." *Id.* (alterations in original) (quoting *Criss,* 867 F.2d at 262). Only "some probability of criminal activity" is required to establish probable cause. *Id.* (quoting *Criss,* 867 F.2d at 262).

Plaintiff has not produced evidence that creates a genuine issue of material fact as to whether defendant had probable cause to arrest him. Hamilton County Court records show that plaintiff was arrested for "Trafficking in Drugs" in violation of Ohio Rev. Code § 2925.03 and §

2925.11. As of the date Carnine swore out the affidavit and complaint, the evidence shows he was working with a "confidential informant" as part of an operation to negotiate a purchase of heroin from plaintiff; on February 1, 2016, the CI met with plaintiff at the location specified in the affidavit and complaint, which is within 1000 feet of Woodward High School; the CI purchased heroin from plaintiff "with pre-recorded government funds"; DART agents conducted mobile surveillance of plaintiff with the assistance of the Cincinnati Police Department after the CI provided the heroin to DART agents; the CI was shown a photograph of plaintiff and confirmed that plaintiff had sold him the heroin; and the heroin was tested by the Hamilton County Crime Lab, which concluded the heroin contained fentanyl and acetyl fentanyl. (Carnine Aff., Doc. 55-1 at PAGEID 305-06; Exh. C, PAGEID 309-10). A reasonably well-trained officer in Carnine's position would not have known that these facts failed to establish probable cause at the time of the arrest. *See Barton v. Martin,* 949 F.3d 938, 950 (6th Cir. 2020) (quoting *Harris v. Bornhorst,* 513 F.3d 503, 511 (6th Cir. 2008)).

Plaintiff nonetheless alleges there is no probable cause because Carnine made a false statement or omission either deliberately or with reckless disregard for the truth, which was material to the finding of probable cause. (Doc. 60 at PAGEID 335, citing *Vakilian*, 335 F.3d at 517; *Sykes*, 625 F.3d at 305). Plaintiff claims that Carnine made false statements about plaintiff selling fentanyl and acetyl fentanyl to an agent of DART and omitted facts that misrepresented an "alleged civilian witness . . . as an agent of [DART]." (*Id*. at PAGEID 335). Plaintiff alleges that because Carnine knew or possessed information that contradicted his sworn assertions, Carnine is not entitled to qualified immunity. (*Id*., citing *Butler v. City of Detroit*, 936 F.3d 410, 419 (6th Cir. 2019)). Plaintiff alleges that when the false statements are set aside and the affidavit is considered absent those statements, the affidavit is not sufficient to show probable

cause.  Plaintiff further claims that "Carnine did not prove that the alleged confidential informant was reliable," such as by indicating Carnine had worked with the CI before or that the CI was searched before the alleged transaction to insure he had no drugs on money in his possession. (*Id*.).  Plaintiff also alleges that the affidavit does not specify where in or near the McDonald's restaurant the meeting between plaintiff and the CI allegedly occurred; there is no audio or video recording of what transpired; and no heroin was ever recovered.[9]  (*Id*.).

Plaintiff has failed to produce evidence demonstrating that Carnine knew at the time of plaintiff's arrest that probable cause for the arrest was lacking.  *Robertson*, 753 F.3d at 619.  At the time of the arrest, Carnine had particularized information showing that plaintiff had sold a controlled substance to an individual who was working with Carnine and other law enforcement personnel, including DART officers, as part of a drug trafficking investigation.  (Carnine Aff., Doc. 55-1 at PAGEID 305).  The purchase was made using pre-recorded government funds. (*Id*.).  Law enforcement personnel, including DART agents who received the heroin that plaintiff had sold to the CI after the transaction, conducted mobile surveillance of plaintiff with the assistance of the Cincinnati Police Department after that point.  (*Id*. at 306).  The CI identified plaintiff as the individual who had sold him the heroin when shown a photograph of plaintiff. (*Id*.).  The Hamilton County Crime Lab confirmed that the substance plaintiff sold to the CI contained fentanyl and acetate fentanyl.  (*Id*.).  Carnine was entitled to rely on the CI's identification of plaintiff as the individual who sold him the controlled substance to establish probable cause.  *Ahlers*, 188 F.3d at 370 ("A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest.");

---

[9] The evidence shows that an audio recording of the transaction was made.  (Doc. 60, Exh. F at PAGEID 358). However, the recording was corrupted and was rendered unusable.  (Matthew Broo Aff., Doc. 63-1 at PAGEID 390).

*Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) ("[A]n eye witness identification and accusation, by itself, is sufficient to establish probable cause.").  The Sixth Circuit explained in *Ahlers*:

> An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation. This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity.

*Ahlers*, 188 F.3d at 370 (internal citations and quotations omitted).  Plaintiff has not produced evidence that shows the identification the CI provided was not reliable or was mistaken and that Carnine knew this as of the date of plaintiff's arrest.  Plaintiff has not shown that probable cause was lacking on this ground.  *Cf. Radvansky,* 395 F.3d at 291 (finding that arrest lacked probable clause where arresting officers considered only inculpatory evidence in their possession and ignored exculpatory evidence).

  Plaintiff has also failed to present evidence that shows Carnine intentionally misrepresented material facts in his affidavit and complaints by stating it was a "CI" who allegedly purchased drugs from plaintiff.  (Doc. 60 at PAGEID 350, citing Exh. F).  Plaintiff asserts that the State represented to him during discovery proceedings in his criminal case that the alleged "agent" was either a CI or a civilian witness.[10]  It is not clear from the record which of these is accurate.  Further, evidence that Carnine referred to the purchaser as an "agent of

---

[10] The "State's Response to Defendant's Demand for Discovery" filed in the state court criminal proceedings against plaintiff on September 26, 2016, listed as witnesses: Carnine; "PO Lewis - DART"; "DART agents, information unknown at this time"; "Cincinnati Police District 4 Officers, information unknown at this time"; "Confidential Informant"; and other Hamilton County employees.  (Doc. 18-1 at PAGEID 141).  In its "Supplemental Response to Defendant's Demand for Discovery" filed on May 30, 2017, the only information the State provided under "Witnesses" was: "Civilian witness name and address provided separately and served in court on May 26th, 2017." (*Id*. at 130).

DART" does not support a finding that Carnine intentionally misrepresented facts in his affidavit and complaints. A civilian who was not employed by DART but who was cooperating with DART personnel as part of an investigation could reasonably be characterized as "an agent of DART."

Plaintiff has not produced any other evidence that shows Carnine lacked probable cause for plaintiff's arrest. The "facts and circumstances within [Carnine's] knowledge [were] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [plaintiff had] committed . . . an offense." *See Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir. 2003) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)). If the officer "could reasonably (even if erroneously) have believed that the arrest was lawful, in light of . . . the information possessed at the time by the arresting agent," then he is entitled to qualified immunity from liability for false arrest. *White v. City of Cleveland,* No. 1:17-cv-01165, 2020 WL 7640932, at *17 (N.D. Ohio Dec. 23, 2020) (citing *Barton,* 949 F.3d at 950) (quoting *Harris,* 513 F.3d at 511). Defendant Carnine is therefore entitled to qualified immunity and summary judgment on plaintiff's false arrest claim under the Fourth Amendment.

### 2. Malicious prosecution

Plaintiff claims that Carnine violated his Fourth Amendment right to be free of malicious prosecution "when he submitted his unconstitutional affidavit that included false statements and misleading omissions to get [plaintiff] falsely arrested and prosecuted. . . ." (Doc. 60 at PAGEID 339). Plaintiff alleges that because Carnine made misleading omissions and false statements in his affidavit, the grand jury indictment does not establish probable cause for the prosecution. *Id.* (citing *King v. Harwood,* 852 F.3d 568, 587-88 (6th Cir. 2017)). Plaintiff also claims that the

case was terminated in his favor because the state did not have evidence to move forward and there was no agreement or compromise between plaintiff and the State. (*Id*.).

Defendant contends he is entitled to qualified immunity and summary judgment on plaintiff's malicious prosecution claim under § 1983. (Doc. 55 at PAGEID 292-93). Defendant argues that a reasonably prudent officer would have believed that plaintiff was involved in the sale and possession of drugs based on the information available to him. (*Id*. at PAGEID 291). Defendant contends there was probable cause for the arrest and for the prosecution, which is clearly established by the grand jury indictment. (*Id*. at PAGEID 293). In addition, defendant contends that the fourth element of a malicious prosecution claim - termination of the proceeding in the party's favor - is not satisfied because the State voluntarily dismissed the criminal proceedings against plaintiff. (*Id*., citing Ohio cases).

The Sixth Circuit recognizes malicious prosecution as a separate constitutional claim under the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes,* 625 F.3d at 308 (citing *Wallace v. Kato,* 549 U.S. 384, 390 (2007)). "[T]he Fourth Amendment prohibits only those pretrial seizures (or prosecutions) that lack *probable cause*, and § 1983 grants qualified immunity to defendants who mistakenly but reasonably conclude that probable cause exists." *Lester,* 986 F.3d at 607. *See also Wright v. City of Euclid, Ohio*, 962 F.3d 852, 877 (6th Cir. 2020) ("A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehood results in arrest and prosecution without probable cause.'") (quoting *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015)). "The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person." *Mills v. Barnard*, 869 F.3d 473, 480 (6th

Cir. 2017).  "[A]n individual's 'continued detention without probable cause'" can also support a

claim for malicious prosecution under § 1983.  *White,* 2020 WL 7640932, at *18 (quoting *Mills,*

869 F.3d at 480).

A malicious prosecution claim has four elements: "(1) the defendant 'made, influenced,

or participated in the decision to prosecute'; (2) the government lacked probable cause; (3) the

proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in

the plaintiff's favor."  *Lester*, 986 F.3d at 606 (citing *Jones v. Clark County*, 959 F.3d 748, 756

(6th Cir. 2020)).  A "malicious prosecution claim differs from [a] false arrest claim because the

review of probable cause includes all information known to the officer at the time of his actions

and not just the information included in the arrest warrant application itself."  *Fry*, 678 F. App'x

at 320.

At a minimum, "whether an officer influenced or participated in the decision to prosecute

hinges on the degree of the officer's involvement and the nature of the officer's actions."

*Wright*, 962 F.3d at 876 (quoting *Sykes*, 625 F.3d at 311 n. 9).  "[T]here must be some element of

blameworthiness or culpability in the participation"; "truthful participation in the prosecution is

not actionable."  *Johnson*, 790 F.3d at 655 (citing *Sykes*, 625 F.3d at 314).  The plaintiff can

satisfy this prong by showing that the officer gave false testimony before a grand jury or by

falsely prompting or urging a prosecutor's decision to bring charges in the first place.  *Wright*,

962 F.3d at 663, 666.

A grand jury indictment creates a presumption of probable cause, *King*, 852 F.3d at 586,

and confers absolute immunity on a grand jury witness "based on the witness' testimony . . . ."

*Rehberg v. Paulk*, 566 U.S. 356, 369 (2012).  *See also Higgason v. Stephens*, 288 F.3d 868, 877

(6th Cir. 2002) ("[T]he finding of an indictment, fair upon its face, by a properly constituted

grand jury, conclusively determines the existence of probable cause for the purpose of holding

the accused to answer.") (quoting *Ex Parte United States*, 287 U.S. 241, 250 (1932)). A plaintiff

may not circumvent the grant of absolute immunity to a grand jury witness by claiming "the

witness conspired to present false testimony" or by using evidence of the witness' testimony to

support a § 1983 claim regarding "the initiation or maintenance of a prosecution." *Rehberg*, 566

U.S. at 369. A law enforcement officer is not entitled to the presumption of probable cause

created by a grand jury indictment where:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion,
> either knowingly or recklessly makes false statements (such as in affidavits or
> investigative reports) or falsifies or fabricates evidence; (2) the false statements
> and evidence, together with any concomitant misleading omissions, are material
> to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence,
> and omissions do not consist solely of grand-jury testimony or preparation for that
> testimony (where preparation has a meaning broad enough to encompass
> conspiring to commit perjury before the grand jury). . . .

*King*, 852 F.3d at 587-88. In these circumstances, the presumption is not conclusive and is

rebuttable. *Id*.

Here, assuming for purposes of the summary judgment motion that defendant Carnine

"made, influenced, or participated in the decision to prosecute" plaintiff, Carnine is nonetheless

entitled to summary judgment on plaintiff's malicious prosecution claim. The grand jury

indictment against plaintiff creates a presumption of probable cause. Plaintiff has not produced

any evidence that rebuts the presumption. For the reasons discussed in connection with

plaintiff's false arrest claim, there is no evidence that Carnine prepared an affidavit or complaint

that included false statements that he knowingly or recklessly made, or that Carnine fabricated

evidence which he included in the affidavit and complaints. Nor is there evidence that any

alleged falsehoods, omissions, and fabricated evidence - and in particular Carnine's

representation that the individual to whom plaintiff sold the heroin was an "agent of DART" -

26

were material to the initiation or continuation of plaintiff's prosecution. The bill of particulars filed in Hamilton County Court of Common Pleas Criminal Case No. B1604890 included additional information that plaintiff Baker was "under constant police surveillance" when he sold an "acetyl fentanyl/fentanyl mixture to a confidential police informant" for $240.00. (Doc. 18-1 at PAGEID 142). The Hamilton County Prosecutor's Office eventually decided to dismiss the charges not because evidence had been fabricated or because misrepresentations had been made, but instead because an audio recording of the transaction had been corrupted; the Hamilton County Prosecutor's Office decided "it was impractical to transport the confidential informant," who was incarcerated in the Ohio Department of Corrections during plaintiff's prosecution, to Hamilton County; and other criminal charges were pending against plaintiff. (*See* Broo Aff., Doc. 63-1). Plaintiff has not introduced any evidence that creates a genuine issue of fact as to whether these were not the true reasons the Prosecutor's Office decided not to pursue charges against plaintiff.

Thus, plaintiff has not carried his burden to show there is a genuine dispute as to whether an exception to the presumption of probable cause created by the grand jury indictment applies. Plaintiff has not produced evidence to show that Carnine falsified or fabricated evidence, or made misleading omissions from his affidavit and complaints, which were material to the decision to prosecute plaintiff. Defendant Carnine is entitled to qualified immunity on plaintiff's malicious prosecution claim under § 1983.

### 3. Civil conspiracy

"A civil conspiracy claim under § 1983 . . . lies where there is 'an agreement between two or more persons to injure another by unlawful action.'" *Robertson*, 753 F.3d at 622 (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To prevail on a civil conspiracy claim,

27

plaintiff must show that "'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Revis,* 489 F.3d at 290). A "conspiracy claim[] must be pled with some degree of specificity"; "vague and conclusory allegations" that are "unsupported by material facts" will not suffice. *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Plaintiff has not produced evidence to support a civil conspiracy claim against Carnine. Plaintiff alleges in support of his conspiracy claim that Carnine and other officers "planned the investigation and prosecution" of plaintiff. (Doc. 60 at PAGEID 340). Plaintiff alleges it can be "implied" from the "false conclusory affidavit submitted" to the issuing judge and prosecutors that Carnine's "fellow officers knew of and conspired in all acts committed" to have plaintiff "falsely seized, search, arrested and prosecuted" because the same officers participated as witnesses in the investigation and prosecution. (*Id.*). But even assuming, *arguendo*, that Carnine's affidavit was conclusory and was not accurate, the simple fact that the same officers were involved in both the investigation and prosecution of plaintiff is not sufficient to support an inference of wrongdoing and a civil conspiracy claim. Defendant Carnine is entitled to qualified immunity on plaintiff's civil conspiracy claim.

### 4. Fabrication of evidence

Defendant argues he is entitled to qualified immunity and summary judgment on plaintiff's fabrication of evidence claim. "The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of

the jury.'" *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)).

As discussed *supra*, there was probable cause for plaintiff's arrest and prosecution, and plaintiff has not produced evidence to overcome the presumption of probable cause created by the Grand Jury indictment. Plaintiff has not shown that defendant fabricated evidence and that there is a reasonable likelihood any allegedly false evidence was material to the decision to arrest or prosecute plaintiff. Defendant is entitled to qualified immunity on this claim.

### 5. Deprivation of Liberty

Plaintiff's fifth claim is a claim for deprivation of liberty. (Doc. 18 at PAGEID 123). Plaintiff has not addressed this claim in his response to defendant's motion for summary judgment. (Doc. 60). It is not clear from the complaint how this claim differs from plaintiff's claims for illegal search and seizure and malicious prosecution. In essence, plaintiff's deprivation of liberty claim is derivative of his false arrest claim insofar as plaintiff alleges there was no probable cause for his extended detention. *See Wright,* 962 F.3d at 874 (the plaintiff's claim "for a violation of the Fourth Amendment based on his extended detention after he posted bond" was "in essence, derivative of his false-arrest claim -that is, his detention was unreasonably extended without probable cause."). Further, "deprivation of liberty beyond the initial seizure" is just one element of a malicious prosecution claim under the Fourth Amendment. *Id*. at 875-77. For the reasons set forth *supra* in connection with plaintiff's other § 1983 claims against Carnine, plaintiff has not produced evidence to show that Carnine violated plaintiff's constitutional rights by detaining him without probable cause or by wrongfully investigating, prosecuting, or incarcerating plaintiff. Thus, defendant is entitled to qualified immunity on plaintiff's claim for deprivation of liberty.

29

### 6. Municipal liability

Plaintiff brings a "municipal liability" claim against Carnine in his "official capacity." (Doc. 18 at PAGEID 124). A § 1983 claim against a municipal employee or agent for acts undertaken in an official capacity is tantamount to a claim against the municipality that the employee or agent represents. *Clemens v. Mt. Clemens Community Sch. Dist.*, 305 F. Supp. 3d 759, 768 (E.D. Mich. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). A municipality may not be held liable under § 1983 based on the theory of *respondeat superior* for an injury inflicted solely by its employee. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Instead, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Wright*, 962 F.3d at 879-80 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff makes this showing by demonstrating "that the municipality had a 'policy or custom' that caused the violation of his rights. *Id*. at 880 (quoting *Monell*, 436 U.S. at 694). Plaintiff must establish "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess*, 735 F.3d at 478.

Assuming for summary judgment purposes that Carnine is a municipal employee, plaintiff has not produced any evidence to show that a municipal "policy of custom" caused the deprivation of plaintiff's constitutional rights. Defendant is entitled to summary judgment on plaintiff's municipal liability claim.

### 7. Remaining federal counts

The remaining counts of the amended complaint brought under § 1983 do not mention Carnine.  These are Count 4 (failure to intervene under federal law) and Count 10 (supervisory liability claim against John Doe officers and DART agency policy makers).  As plaintiff has not produced any evidence to support these § 1983 claims against Carnine, defendant Carnine is entitled to summary judgment on these federal claims.[11]

## III.  State claims

Plaintiff brings claims under state law against defendant Carnine for malicious prosecution (Count 1), fabrication of evidence (Count 3), deprivation of liberty (Count 5), illegal seizure (Count 6), illegal search (Count 7), and intentional and negligent infliction of emotional distress (Counts 8, 9).  Plaintiff does not specify whether he brings his civil conspiracy claim (Count 2) under state or federal law, so the Court assumes he brings the claim under both.

District courts "shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy" as the claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a).  A court "may decline to exercise supplemental jurisdiction over a claim" in one of four situations:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id*. § 1367(c).

---

[11] Count 12, a malicious prosecution claim under federal and state law against defendants McIlwain and Broo, is no longer before the Court.  Defendants McIlwain and Broo were dismissed from this case for want of prosecution and failure to obey a court order.  (Doc. 51).

31

District courts may remand state-law claims under subsection (b)(2) when few or no federal claims remain. Once there are no longer any federal claims remaining in the case, the district court "should not ordinarily reach the plaintiff's state-law claims." *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Here, if the district court were to maintain supplemental jurisdiction, only Ohio law claims would be left to resolve. The Court should therefore decline to exercise its supplemental jurisdiction.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Carnine's motion for summary judgment (Doc. 55) be **GRANTED** on all federal claims raised in the amended complaint under 42 U.S.C. § 1983 (Doc. 18), and plaintiff's § 1983 claims be **DISMISSED**.

2. The Court decline to exercise its supplemental jurisdiction over plaintiff's claims brought under state law.

3. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105 F.3d 274, 277 (6th Cir. 1997).

Date: 8/17/2021

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DAVID ADAM BAKER,                     Case No. 1:19-cv-0060
      Plaintiff,

                                    McFarland, J.
      vs.                              Litkovitz, M.J.

JEFFREY CARNINE, et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).